<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WILLIAM PITTMAN, | : | |
| | : | Civil Action No. 08-2373 (GEB) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| METUCHEN POLICE DEPT., et al., | : | |
| | : | |
| Defendants. | : | |

RECEIVED

OCT 1 3 2010

AT 8:30_____
WILLIAM T. WALSH
CLERK

**BROWN, Chief Judge,**

This matter comes before the Court upon the cross-motions for summary judgment by *pro se* Plaintiff William Pittman ("Plaintiff") and Defendants Metuchen Police Department, Borough of Metuchen, Chief James Keane, Michael Kilker, David Irizarry, Sergeant William McDuffie, Vincent Russo, Arthur Flaherty, Anthony Carro, Captain Robin Retenberg, Officer Steven Menafro, Sergeant Steven Wilczynsky, Bruce Kaplan, Carlos Jimenez, Julie Davidson, Seanna Pappas, Harold Fullilove and James T. O'Brien (collectively, "Defendants"). Though Defendants filed several separate motions, all Defendants rely primarily on three briefs. (*See* Docket Entry Nos. 127, 129, 133.) Plaintiff filed opposition to Defendants' motions and Defendants filed opposition to Plaintiff's motions. Having decided the motions without oral argument pursuant to FED. R. CIV. P. 78, for the following reasons, the Court will grant Defendants' motions for summary judgment and will deny Plaintiff's motions.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The instant action stems from the May 2003 arrests of Plaintiff for "peeping tom" charges, and the subsequent prosecution of those charges. On May 13, 2008, Plaintiff filed the instant action in this Court. (*See* Docket Entry No.1.) Though it is not entirely clear to the Court, it appears that in his *pro se* Complaint, Plaintiff is alleging claims pursuant to 42 U.S.C. §§ 1983, 1988, violations of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States and a state law claim for malicious prosecution.[1] The following facts are taken from Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Undisputed Material Facts. Though Plaintiff filed a Statement of Undisputed Material Facts with his own motion for summary judgment, he failed to file a responsive Statement of Undisputed Material Facts to Defendants' Statement. However, since Plaintiff is representing himself, the Court will draw the facts from Defendant's Statement of Undisputed Material Facts and Plaintiff's Statement of Undisputed Material Facts. *See Jordan v. Allgroup Wheaton*, 218 F.Supp.2d 643, 646 (D.N.J. 2002). Since there is a lengthy factual background, only those facts relevant to the motions will be discussed.

On March 7, 2003, Sergeant McDuffie and Corporal MacMath were dispatched to the home of Sean Cook in Metuchen pursuant to a 911 call stating that an unidentified man was on Mr. Cook's back deck. (Defs.' Statement of Facts ¶2.) Mr. Cook advised the officers that the individual was a black male with short hair, about six feet tall and weighing about 175 pounds and he entered an older model Honda with a trunk rack. (*Id.* at ¶9.) After trying to pursue the suspect, the officers lost sight of the car in the vicinity of Roosevelt Park. (*Id.*)

---

[1] Plaintiff also refers to claims pursuant to 42 U.S.C. § 1942 several times in his Complaint, however, the Court was unable to locate said statute.

On May 1, 2003, Officers Flaherty and Russo were dispatched to the Metuchen home of Mary Lou Roma-Scott after Ms. Roma-Scott reported seeing a man on her back deck. (*Id.* at ¶12.) The officers were advised by the Detective Bureau that they had been performing surveillance on a individual who parks his car on Wakefield Drive and peers into homes on Stoneham Place. (*Id.* at ¶15.) While driving to Ms. Roma-Scott's house, Officer Flaherty observed Plaintiff running across Middlesex Avenue in the direction of Wakefield Drive. (*Id.* at ¶16.) After Plaintiff got into his car, a red two-door Honda, Officer Flaherty pulled him over. (*Id.* at ¶17.) Officer Russo drove Ms. Roma-Scott past the location where the officers were holding Plaintiff and Ms. Roma-Scott stated that she was seventy percent sure that Plaintiff was the individual she saw on her back deck. (*Id.* at ¶28.) Plaintiff was issued a summons for failing to sign the back of his driver's license and for having a cracked rear windshield. (*Id.* at ¶33.)

On May 2, 2003, Officer Kilker met with Assistant Prosecutor Pappas to advise her that surveillance had been conducted of Plaintiff and during said surveillance, Plaintiff had been observed parking his vehicle on Wakefield Drive and walking towards Stoneham Place. (*Id.* at ¶37.) Assistant Prosecutor Pappas advised Officer Kilker that sufficient probable cause existed to charge Mr. Pittman for the May 1st incident. (*Id.* at ¶38.) The Honorable Lydia Kuhn, J.M.C. of the Metuchen Municipal Court authorized the issuance of the Warrant Complaint for Plaintiff's arrest. (*Id.* at ¶39.) On May 7, 2003, Plaintiff was arrested on said warrant. (Pl.'s Br. Supp. Mot. Summ. J. 3.) Plaintiff was released on the evening of May 7th, after posting a $2,500 bond. (Defs.' Statement of Facts ¶46.)

Later on the evening of May 7th, Corporal Carro responded to a call by Sean Cook, stating that he had seen an individual peering into the home of his neighbor, Marilyn Schmied. (*Id.* at ¶48.)

Mr. Cook stated that a chair had been taken from his deck and placed under a window of Ms.

Schmied's house. (*Id.*) Mr. Cook chased the individual whom he saw peering into the window of

Ms. Schmied's house and confronted him. (*Id.* at ¶49.) Mr. Cook stated that the individual was the

same person whom he had seen peering into his own home on March 7, 2003. (*Id.* at ¶50.) At the

same time, Sergeant Retenberg was on patrol when he heard the call that there had been a peering

incident at 116 Oakland and the suspect had fled in a red Honda. (*Id.* at ¶53.) Since the description

of the individual and the vehicle matched that of Plaintiff, Sergeant Retenberg proceeded to

Plaintiff's residence in Edison, however Plaintiff was not at home. (*Id.* at ¶54.) Another officer

came to relieve Sergeant Retenberg from surveillance of Plaintiff's house and Sergeant Retenberg

went to the station to obtain a photo array of six photographs, one of which was Plaintiff. (*Id.* at

¶61.) After requesting to see the array a second time, Mr. Cook stated that he was ninety percent

sure that the photograph of Plaintiff was the same individual that he saw peering into his neighbor's

window. (*Id.*)

Sergeant Retenberg advised Judge Kuhn that a witness had identified Plaintiff as the

suspected in the May 7th peering incident and the Judge authorized the issuance of a Warrant

Complaint. (*Id.* at ¶64.) Plaintiff was arrested at his home in Edison by Metuchen officers and

Edison Officers. (*Id.* at ¶69-76.) He was processed and released on a $10,000 bond. (*Id.* at ¶79.)

On May 8, 2003, Detective Irizarry contacted Mr. Cook and Mr. Cook advised him that he was one

hundred percent certain that the suspect he saw peering into his neighbor's window on May 7th is the

same individual whom he saw peering into his window on March 7th. (*Id.* at ¶83.) After she was

advised of Mr. Cook's statements, Ms. Pappas instructed Detective Irizarry to prepare a Warrant

Complaint for peering for the March 7th incident. (*Id.* at ¶84.)

4

On May 9, 2003, when Plaintiff arrived at the municipal courthouse for his arraignment on the May incidents, he was arrested for the March incident. (*Id.* at ¶87.) Plaintiff was arraigned on all charges and pled not guilty. (*Id.* at ¶90.) Plaintiff was unable to post bail and was transported to Middlesex County Adult Corrections Facility. (*Id.* at ¶92.) Judge Kuhn also ordered that Plaintiff be held pending a psychological evaluation. (Docket Entry No. 139-19, Pl.'s Ex. Supp. Summ. J. 5.) On May 27, 2003, the Honorable Frederick Devesa, J.S.C. reviewed the psychological report and found that there was no reason to question the competence of Plaintiff to stand trial and ordered that the psychological report remain sealed. (Docket Entry No. 139-20, Pl.'s Ex. Supp. Summ. J., May 27, 2003 Hr'gTrans. 4:14-23.) On October 3, 2003, an Assistant Prosecutor with the Middlesex County Prosecutor's Office presented the charges against Plaintiff to a Grand Jury. (Prosecutor's Office Defs.' Statement of Facts, ¶15.) The Grand Jury returned Indictment No. 03-10-1276, which included Count 1: Peering on March 7, 2003; Count 2: Peering on May 1, 2003; Count 3: Resisting Arrest on May 7, 2003; and Count 4: Peering on May 7, 2003. (*Id.*) On June 21, 2005, Assistant Prosecutor Davidson re-presented the charges from Indictment 03-10-1276 and the Grand Jury returned superseding Indictment No. 05-06-897 which included charges for Count 1: Peering on March 7, 2003; Count 2: Peering on May 1, 2003; Count 3: Peering on May 7, 2003; Count 4: Resisting Arrest on May 8, 2003; and Count 5: Criminal Trespass on May 1, 2003. (*Id.* at ¶20.) On June 13, 2006, Plaintiff pled guilty to Amended Count 1 of Indictment No. 05-06-897. (*Id.* at ¶25.) Specifically, Plaintiff pled guilty to a Disorderly Person offense of Criminal Trespass

on March 7, 2003 in exchange for the Prosecutor dismissing the other pending charge.[2]  (*Id.*)

Plaintiff was sentenced to thirty days in the Middlesex County Adult Correctional Facility.  (*Id.*)

## II. Discussion

### A. Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987).

However, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Matsushita*, 475 U.S. at 586.  When, as in the present case, Plaintiff appears *pro se,* the Court must apply a more liberal standard of review to Plaintiff's

---

[2]Though it is not entirely clear to the Court, it appears that Counts Two and Five of Indictment No. 05-06-897, relating to the May 1st incident, were dismissed by Superior Court Judge Jane Cantor, J.S.C. on June 13, 2006 prior to Plaintiff's plea agreement.  (Docket Entry No. 166,  Pl.'s Response 32, June 27, 2006 Ltr. to Pl. from William Fetsky.)

claims. *Wade v. Yeager*, 377 F.2d 841, 846 (3d Cir.1967) (recognizing that a petition made without the benefit of counsel must be read with a measure of tolerance).

## B. Analysis

### 1. Claims Against Metuchen Police Department, Borough of Metuchen and Individual Officers

#### a. 42 U.S.C. §1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir.1994).

#### i. False Arrest and False Imprisonment

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under §1983. *See Walmsley v. Philadelphia*, 872 F.2d 546 (3d Cir.1989) (citing cases). In order to state a cognizable Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under §1983 for false imprisonment based on a detention pursuant to that arrest." *Williams v. Northfield Police Dept.*, 2010 WL 2802229 at *4 (D.N.J. July 14, 2010) (citing *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir.1995)); *Palma v. Atlantic County*, 53 F.Supp.2d 743, 755 (D.N.J.1999) (citing *Groman*, 47 F.3d at 636).

A §1983 claim for false arrest typically accrues on the date of the plaintiff's arrest. *See Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir.1998); *Rose v. Bartle*, 871 F.2d 331, 348-51 (3d Cir.1989). An arrestee can file suit as soon as the allegedly wrongful arrest occurs; the limitations period begins to run, however, only when the allegedly false imprisonment ends, that is, when the arrestee becomes held by legal process, for example, when he is "bound over by a magistrate or arraigned on criminal charges." *Wallace v. Kato*, 549 U.S. 384, 388-90 (2007).

Federal courts look to state law to determine the limitations period for §1983 actions. *See Wallace*, 549 U.S. at 387-88. Civil rights or constitutional tort claims, such as that presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. *See Wallace, supra*; *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann, § 2A:14-2, governs Plaintiff's claims. *See Montgomery*, 159 F.3d at 126 & n. 4; *Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir.1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. *Cito*, 892 F.2d at 25; *accord Brown v. Foley*, 810 F.2d 55, 56 (3d Cir.1987).

Plaintiff's claims regarding false arrest and false imprisonment relate to his arrests on May 7, 2003, May 8, 2003 and May 9, 2003. After his arrests on May 7th and May 8th, Plaintiff was processed and released after posting bail. (Defs.' Statement of Material Facts ¶¶ 46, 77.) Therefore, his claims for false imprisonment and false arrest stemming from those arrests accrued and his statute of limitations began to run on that day. *See Torres v. Township of North Bergen*, 2010 WL 56043 at *3 (D.N.J. Jan 05, 2010) ("since Plaintiff was arrested and immediately released on July 20, 2005...his claim for false imprisonment began to accrue on that day.") Since Judge Devesa found Plaintiff to be competent, there is nothing to support an argument that Plaintiff would be entitled to equitable tolling of the statute of limitations.[3] After his arrest on May 9, 2003, Plaintiff was arraigned before Judge Kuhn. (Defs.' Statement of Material Facts ¶¶ 91.) Plaintiff was unable to post the bail set by Judge Kuhn and as a result, Plaintiff was transported to the Middlesex County Adult Corrections Center. (*Id.* at ¶92.) Therefore, Plaintiff's 2008 complaint was filed well after the expiration of the statute of limitations. Even assuming *arguendo* that the statute of limitations on Plaintiff's claims for false arrest and false imprisonment did not began to run until his appearance before Judge Kuhn on May 9, 2003, his complaint, filed on May 13, 2008,

---

[3] New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *See Freeman v. State*, 347 N.J.Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir.2000). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

is still filed out of time. Therefore, the Court will grant Defendants' motion for summary judgment on the claims for false arrest and false imprisonment.[4]

### ii. Photo Lineup

Plaintiff alleges that Defendant Rentenberg violated his Sixth Amendment and Fourteenth Amendment rights by conducting an improper photo lineup on May 7, 2003.[5] (Pl.'s Compl. ¶¶ 47-42.) As discussed above, the two year state statute of limitations applies to §1983 actions. See *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citing *Cito v. Bridgewater Tp. Police Dept.*, 892 F.2d 23, 25 (3rd Cir.1989)) ("...for section 1983 the courts should select the state statute of limitations period applicable to personal injury torts...New Jersey's two-year limitations period on personal injury actions, N.J.S.A. 2A:14-2, applies to a civil rights claim under section 1983.") "A federal civil rights action accrues when the plaintiff knew or had reason to know of the injury that constitutes the basis of the action." *Rolax v. Whitman*, 175 F.Supp.2d 720, 727 (D.N.J .,2001) (citing *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 197, n. 16 (3d Cir.1984)).

Plaintiff bases his claim against Defendant Rentenberg on testimony Defendant Rentenberg gave regarding the Metuchen Police Department's practices for conducting a photo lineup. (Pl.'s Compl. ¶¶ 47-42; Pl.'s Opp'n 5-8.) Said testimony occurred during Plaintiff's criminal trial on

---

[4] Without going into great detail, the Court finds that Plaintiff's claims for false arrest and false imprisonment would also be dismissed on the merits because probable cause existed for the arrests. See *Shepherd v. Ambrosino*, 2010 WL 2802238 at *4 (D.N.J. July 15, 2010) ("[t]he judge's approval of the Warrant Complaints and Search Warrant validates [Defendant]'s determination of probable cause"); *see also Rose v. Bartle*, 871 F.2d 331, 353 (3d. 1989) ("a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute, but that this prima facie evidence may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means.")

[5] Though Plaintiff states the date of the line-up as "5/7/08", it is clear from the context of the rest of the allegations contained in the Complaint that "08" was a typo and the line-up actually occurred in 2003.

unrelated charges on October 3, 2002.[6]  Since the testimony occurred during his own criminal trial, Plaintiff was clearly aware of the process undertaken by Defendant Retenberg with regard to photo lineups as of that date.  Therefore, Plaintiff's claims arising out of the photo lineup accrued and the statute of limitations began to run on October 3, 2002 and Plaintiff's claims filed in 2008 regarding the photo lineup were filed out of time.  As such, the Court will grant summary judgment to Defendants on that claim.

### iii. False Testimony

Plaintiff's Complaint contains allegations of false testimony against several Defendants. Specifically, Plaintiff alleges that Defendants Flaherty, Russo, Rentenberg, Irrizarry and witness Sean Cook testified falsely to the grand jury on October 3, 2003.  (Pl.'s Compl. ¶53.)  Plaintiff also alleges that Defendant Menafro testified falsely to the grand jury on June 21, 2005.  (*Id.* at ¶68.) For the reasons stated above in Section II(B)(1)(a)(i), the statute of limitations for claims regarding the alleged false testimony accrued and began to run on October 3, 2003 and June 21, 2005 respectively and as such, had expired when Plaintiff filed his Complaint in 2008.  Plaintiff was represented by counsel at the time of the alleged false testimony and has not provided the Court with any argument to support the tolling of the statute of limitations.  Therefore, the Court will grant summary judgment for Defendants regarding Plaintiff's claims for false testimony.

### iv. Conspiracy

Plaintiff alleges that "[o]n 5/1/2003 Officer Flaherty, also Russo, Sgt McDuffy, Chief Keane would cospire [*sic*] to harrass [*sic*] and also falsily [*sic*] charge defendant, with crimes that know

---

[6]Plaintiff mentions both October 3, 2002 and October 3, 2003 as dates of testimony from Defendant Retenberg (Pl.'s Opp'n 5-8), but it appears from the transcript which Plaintiff relies on in support of his argument that the referenced testimony occurred on October 3, 2002.  (*See* Pl.'s Opp'n Ex. A.)

[*sic*] did not commit." (*Id.* at ¶9.)  Plaintiff also alleges that "Michael Kilkers [*sic*] actions, in

which he did [*sic*] Detective Irizarry did conspire to aid in the signing of criminal charges, that were

signed by Officer Flaherty, with out [*sic*] probable cause.  And knowing from [*sic*] the report of

Officer Russo from 5/1/2003 which gives the information of the incident." (*Id.* at ¶38.)  Finally,

Plaintiff alleges that on May 7, 2003, Defendants Wilcznsky and Rentenberg conspired to conduct

an improper photo lineup. (*Id.* at ¶74.)

      It is not entirely clear to the Court whether Plaintiff attempts to allege a conspiracy pursuant

to 42 U.S.C. §1983 or 42 U.S.C. §1985.  However, it is unnecessary to identify which theory

Plaintiff intends to utilize because the statute of limitations has expired for his conspiracy claims

under both statutes.  As stated above, the statute of limitations for a claim pursuant to 42 U.S.C.

§1983 or 42 U.S.C. §1985 is two years.  See *Liberty Hill Realty, Inc. v. Illva Saronno Corp.*, 2007

WL 2080011at *2 (D.N.J. July 17, 2007) (citing *Padilla v. Twp. of Cherry Hill*, 110 Fed.Appx. 272,

276 (3d Cir.2004)).  A claim pursuant to §1985 accrues when "a plaintiff knew or should have

known of the alleged conspiracy." *Dique v. New Jersey State Police*, 603 F.3d 181, 189 (3d Cir.

2010) (citing *Bougher v. Univ. of Pitts.*, 882 F.2d 74, 80 (3d Cir.1989)).  For civil conspiracy claims

42 U.S.C. § 1983, courts look to "the moment of plaintiff's actual injury...actual injury is the focal

point, not the illegal agreement per se, as is true in the criminal context. As with the general rule, the

plaintiff's knowledge must be of the injury, not the underlying acts, in order for the claim to accrue."

*McGarrey v. Marquart*, 2010 WL 235115, at *6 (W.D.Pa. January 12, 2010 )(citations omitted).

      In this case, all of the alleged overt acts of the conspiracies transpired in 2003 and Plaintiff

was aware of the alleged conspiracies in 2003 when he alleges he was harassed and arrested; when

the allegedly false criminal charges were filed; and when the alleged improper photo lineup was

conducted, respectively.  Therefore, Plaintiff's conspiracy claims accrued in 2003 and had long

since expired by 2008 when Plaintiff filed his claim.  As such, the Court will grant Defendants'

motion for summary judgment on Plaintiff's conspiracy claims.[7]

### v. Assault

Plaintiff alleges that "...Sgt. McDuffy would arrive, in which he would assault plaintiff by

slapping twice..." (Pl.'s Compl. ¶8.)  As stated above, the statute of limitations for Plaintiff's

assault claim, as a tort, accrued and began to run when the alleged assault occurred on May 1, 2003.

Therefore, the two year statute of limitations expired in 2005 and Plaintiff's claim, filed in 2008, is

time barred.  The Court will grant Defendants' motion for summary judgment on Plaintiff's assault

claims.

### b. Malicious Prosecution

Though it is not entirely clear, it appears that Plaintiff alleges a claim for malicious

prosecution under both §1983 and state law.  To prove malicious prosecution under section 1983

when the claim arises under the Fourth Amendment, a plaintiff must show that: (1) the defendant

initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant

initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose

other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty

---

[7] To the extent Plaintiff is alleging a conspiracy to maliciously prosecute, even if the Court were to find that Plaintiff's conspiracy claim did not accrue until the termination of his criminal proceeding in June 2006, Plaintiff's conspiracy claims would still fail on substantive grounds.  In order to prevail on a conspiracy claim under §1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 245 (3d Cir.1999).  In this case, Plaintiff does not allege the conspiracy claims with any specificity.  Rather, he only makes conclusory, unsupported statements.  Further, Plaintiff does raise any evidence or arguments to defeat summary judgment on the § 1983 conspiracy claim.  *Mollo v. Passaic Valley Sewerage Com'rs*, 2009 WL 5216976, at *15 (D.N.J. December 30, 2009).  Plaintiff also does not provide support for a conspiracy under §1985 as "the reach of section 1985(3) is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.' " *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)). The second element of malicious prosecution, favorable termination, is established when the plaintiff is "innocent of the crime charged in the underlying prosecution." *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir.2000)); *see also Freeman v. State*, 788 A.2d 867, 877 ("The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's innocence of the crime for which they were charged.") (citing *Rubin v. Nowak*, 248 N.J.Super. 80, 83, 590 A.2d 249 (App.Div.1991)); *see also Marable v. West Pottsgrove Twp.*, 2005 WL 1625055, at *8 (E.D.Pa. July 08, 2005) . "If the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under §1983." *Id.* (citing *Taylor*, 115 Fed. Appx. at 552 (citing *Hilfirty*, 91 F.3d at 580; *Alianell v. Hoffman*, 317 Pa. 148, 176 A.2d 207 (1935)); *see also, Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir.2002)).

Under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Campanello v. Port Authority of New York & New Jersey*, 2010 WL 3429571 at *2 (D.N.J. August 27, 2010) (citing *Lind v. Schmid*, 67 N.J. 255, 262, 337 A.2d 365 (1975)). It is well settled that in circumstances where a criminal charge is withdrawn or a prosecution is abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution. *Mondrow v. Selwyn*, 172 N.J.Super. 379, 384, 412 A.2d 447 (App. Div. 1980); *Thomas v. New Jersey Inst. of Tech.*, 178 N.J.Super. 60, 61 (Law Div. 1981).

In this case, Plaintiff cannot meet the necessary requirements for a claim of malicious prosecution under either state law or §1983.  On June 13, 2006, Plaintiff pled guilty to Count One of Indictment No. 05-06-897 for Disorderly Persons Criminal Trespass on March 7, 2003.  (MCPO's Br. Summ. J., Exhibit JJJ, Transcript of Plea and Sentence, 2:3-14.)  In exchange for his pleading guilty to Count One, Assistant Prosecutor Jimenez agreed to dismiss the other remaining charge related to the peering incident on May 7, 2003.[8]  (Id.)  Therefore, Plaintiff cannot meet the fourth requirement for a claim of malicious prosecution as he cannot show that the criminal prosecution terminated in his favor.

Plaintiff must also demonstrate that Defendants acted with malice. "Malice ... is defined as the 'intentional doing of a wrongful act without just cause or excuse.'" *LoBiondo v. Schwartz*, 199 N.J. 62, 94, 970 A.2d 1007 (2009) (citing *Jobes v. Evangelista*, 369 N.J.Super. 384, 398, 849 A.2d 186 (App.Div.2004)). "It requires proof that the act was wrongful in the sense that it would, 'in the ordinary course ... infringe upon the rights of another' and cause damage to that person's property or trade." *Id.* (quoting *Mayflower Indus. v. Thor Corp.*, 15 N.J.Super. 139, 153, 83 A.2d 246 (Ch.Div.1951)). Where a plaintiff lacks direct proof that a defendant intentionally instituted an action against a plaintiff without just cause or excuse, "malice may be inferred from want of probable cause." *Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 395, 972 A.2d 1112 (2009). However, "a plaintiff cannot simply point to the absence of probable cause as sufficient proof of the required element of malice," and "it is not unreasonable to require that plaintiff, on a

---

[8] As stated above, it appears that Counts Two and Five of Indictment No. 05-06-897, relating to the May 1st incident, were dismissed by Judge Cantor, prior to Plaintiff's plea agreement. (Docket Entry No. 166, Pl.'s Response 32, June 27, 2006 Ltr. from William Fetsky.) Though it is not entirely clear to the Court, based on the moving papers filed by Plaintiff's attorney in the criminal proceeding, it appears that the basis for the Motion to Suppress/Dismiss the May 1st counts was an improperly conducted identification.  However, since probable cause existed and Plaintiff cannot demonstrate malice, for purposes of the malicious prosecution analysis, it is unnecessary for the Court to endeavor to determine whether that did in fact occur and if so, whether the dismissal is dispositive of Plaintiff's innocence on said charges.

defendant's motion for summary judgment, produce at least some extrinsic evidence of malice."

*Brunson*, 199 N.J. at 396, 972 A.2d 1112 (citation omitted). Thus, courts have required that "a

showing of actual malice ... include at least some extrinsic evidence of malice, rather than relying

only upon inference." *Id.* (citation omitted). "Actual malice in the context of malicious prosecution

is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of

the prosecution, or its use for an extraneous improper purpose." *Morales v. Busbee*, 972 F.Supp.

254, 261 (D.N.J.1997).

　　In this case, Plaintiff has presented no evidence indicating that Defendants acted with actual

malice by instituting a criminal action against Plaintiff.  Plaintiff instead argues that malice should

be inferred from his allegations of lack of probable cause and false testimony. Even if the Court

were to assume Defendants lacked probable cause, Plaintiff has failed to point to any extrinsic

evidence of malice in the record to support an inference of malice.

　　Plaintiff also cannot show that Defendants initiated the proceeding without probable cause.

All of the incidents began with a complaining witness and a phone call to the police.  With the

March 7th and May 7th incidents, a witness stated that he was ninety percent sure that Plaintiff was

the individual he saw peering.  With the May 1st incident, a witness stated that she was seventy

percent sure that Plaintiff was the individual she saw peering and the police stopped Plaintiff's car

while leaving the vicinity of that peering incident.  The municipal court judge issued a warrant

complaint for each of the arrests.  *See Shepherd v. Ambrosino*, 2010 WL 2802238 at *4 (D.N.J. July

15, 2010) ("The judge's approval of the Warrant Complaints and Search Warrant validates

[Defendant]'s determination of probable cause.")  Finally, a grand jury indicted Plaintiff on all of the

charges. *Rose v. Bartle*, 871 F.2d 331, 353 (3d. Cir. 1989) ("A grand jury indictment or presentment

constitutes prima facie evidence of probable cause to prosecute...")

Thus, this Court concludes that Plaintiff has failed to establish a genuine issue of material fact regarding termination of the proceedings in his favor, probable cause or actual malice. This Court will therefore grant summary judgment in favor of Defendants on Plaintiff's malicious prosecution claims.

### c. Retaliation

To prevail on a retaliation claim under §1983, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 2001 WL 185120 (3d Cir.2001) (quoting *Allah*, 229 F.3d at 225). *See also Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir.1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)); *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-99 (6th Cir.1999), cited with approval in *Allah*, 229 F.3d at 225.

At the outset, Plaintiff has not alleged that he was engaged in a constitutionally-protected activity. As this is the first requirement to succeed on a claim for retaliation under §1983, Plaintiff cannot maintain a claim for retaliation.

### 2. Claims Against Middlesex County Prosecutor's Office Defendants

In his Complaint, Plaintiff alleges that the Middlesex County Prosecutor's Office Defendants (collectively, "MCPO Defendants") allowed the Police Department Defendants to testify falsely at the grand jury; filed a motion to admit of evidence of other crimes which the Prosecutor knew to be false; deliberately aided the Police Defendants in misleading the grand jury; filed a motion deliberately attacking Plaintiff's motion to dismiss the charges from May 1, 2003; and

17

misrepresented the fingerprint evidence by not stating how the investigator arrived at his conclusion. (*See* Pl.'s Compl. ¶¶ 53-54, 56, 59, 62-63, 68-69, 80, 87-88, 92, 94.)

### a. §1983 - Absolute Immunity

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under §1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. *Burns v. Reed*, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). *See generally Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir.2006) (outlining the scope of prosecutorial immunity with respect to various activities).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function. *See Kalina v. Fletcher*, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); *Burns*, 500 U.S. at 492-96 (the provision of legal advice to police during pretrial investigation is protected only by qualified immunity); *Buckley*, 409 U.S. at 276-78 (prosecutor is not acting as an advocate, and is not entitled to absolute immunity, when holding a press conference or fabricating evidence).

18

It appears that Plaintiff attacks only actions taken by the Prosecutors Davidson, Jimenez, Fullilove and Kaplan in their official capacities as advocates for the county in connection with the presentation of the case to the grand jury, filing motions, plea negotiations and decisions regarding the nature of charges to pursue. Even assuming that all of the allegations contained in Plaintiff's Complaint are true, prosecutors have still been granted absolute immunity from §1983 liability in situations in which the allegations were similar or more egregious than those alleged here. *See Hussein v. New Jersey*, 2010 WL 891843 at *7 (D.N.J. March 10, 2010) (citing *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir.1991) (prosecutors have been granted absolute immunity from § 1983 liability for instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred); *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 490 (1991) (for soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings and trials); *Id.* (citing *Imber*, 424 U.S. at 424-27 (for the knowing use of perjured testimony in a judicial proceedings). Accordingly, Defendants Davidson, Jimenez, Fullilove and Kaplan[9] are entitled to absolute immunity and the Court will grant said Defendants' motion for summary judgment on Plaintiff's claims pursuant to §1983 in both their official and individual capacities.[10]

---

[9] To the extent Plaintiff claims that Defendant Kaplan is responsible for the allegedly improper actions of all Prosecutors in the MCPO simply as a consequence of Defendant Kaplan's position as Middlesex County Prosecutor, that claim is also dismissed. It is well established that "[l]ocal government units and supervisors are not liable under Section 1983 solely on a theory of respondeat superior." *Hagan v. Rogers*, No. 06-4491, 2008 U.S. Dist. LEXIS 39019, at *19 (D.N.J. May 13, 2008) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n. 8 (1985)); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). " 'A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.*' " *Hagan*, 2008 U.S. Dist. LEXIS 39019, at *20 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)).

[10] The official capacity §1983 claims would also be dismissed against the County Defendants for another reason: the Prosecutor's Office Defendants, in their official capacities, are not "persons" under §1983. *Hussein v. New Jersey*, 2010 WL 891843, at *8 (D.N.J. March 10, 2010) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[A] state is not a 'person' for purposes of 42 U.S.C. § 1983."); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity ... should be treated as suits against the state.").

Likewise, "investigators for a prosecutor performing investigative work in connection with a criminal prosecution deserve the same absolute immunity as the prosecutor." *Fuchs v. Mercer County*, 260 Fed.Appx. 472, 475 (3d Cir. 2008)(citing *Davis v. Grusemeyer*, 996 F.2d 617, 632 (3d Cir.1993), *abrogated on other grounds* by *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir.1998)); *see also KRL v. Moore*, 384 F.3d 1105, 1113 (9th Cir.2004) ("[A]n investigator gathering evidence, a month after an indictment was filed, to prepare the prosecutor for trial is engaged in an advocacy function intimately associated with the judicial process, and is entitled to the same immunity that would be afforded a prosecutor"). The claims against Defendant O'Brien are all related to actions undertaken in his role as an investigator for the Prosecutors' Office. Specifically, Plaintiff alleges that Defendant O'Brien conducted his fingerprint analysis improperly and did not provide a report regarding how the analysis was conducted. These actions were pursuant to his role as an investigator and are intimately associated with the judicial process. Therefore, Defendant O'Brien is entitled to absolute immunity and the Court will grant Defendant O'Brien's motion for summary judgment with regard to Plaintiff's §1983 claims in both his official and individual capacity.

### b. Qualified Immunity

Plaintiff's §1983 claims would also be dismissed based on qualified immunity. "Qualified immunity shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier*, No. 07-4329, 266 Fed. Appx. 102 (3d Cir. Feb. 20, 2008), quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the deprivation of a constitutional right,

and (2) whether that right was established at the time of the alleged deprivation." *Dancy*, at *5,

citing *Saucier v. Katz*, 533 U.S. 194 (2001).

The Court finds that the MCPO Defendants would also be entitled to qualified immunity.

Even assuming *arguendo* that the actions undertaken by the Defendants violated Plaintiff's

constitutional rights, the actions were not such that it would be sufficiently clear that the MCPO

Defendants would be aware that he or she was violating Plaintiff's constitutional rights. *See*

*Pearson v. Callaham*, 129 S.Ct. 808 (2009) (a court may exercise discretion in determining which

prong to address first). Defendant Pappas determined there was probable cause to arrest Plaintiff

based on information provided by the officers. Defendant Davidson presented charges to the grand

jury. Defendants Fullilove and Jimenez filed motions and appeared in court. Defendant O'Brien

dusted for fingerprints and prepared a report. Defendant Kaplan oversaw the office. None of these

actions are such that a reasonable official would think he or she is violating a constitutional right.

Therefore, the Court finds that the MCPO Defendants would also be entitled to qualified immunity

on the §1983 claims.

### c. §1983 and State Law - Malicious Prosecution

In addition to the absolute and qualified immunities that the Court discusses above, the

federal and state claims of malicious prosecution would also be dismissed against the MCPO

Defendants for the reasons set forth above in Section II(B)(1)(b). Further, though it appears that

Plaintiff filed a Notice of Claim under the New Jersey Tort Claims Act with the Police Department

Defendants, it appears that he did not file the required notice with the Prosecutor's Office

Defendants. Therefore, his state law claim would be barred.

### 3. Other Claims

#### a. Punitive Damages

Plaintiff requests punitive damages for several claims in his Complaint.  However, as the Court will grant summary judgment on all counts to Defendants, this request is moot.

#### b. 42 U.S.C. §1988 - Attorneys' Fees

42 U.S.C. §1988 provides that "[i]n any action or proceeding to enforce a provision of...section 1983 of this title...the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee as part of the costs."  Plaintiff seeks attorney's fees pursuant to this statute.  However, as the Court will grant summary judgment on all counts to Defendants, this request is also moot.

#### c. Fourteenth Amendment

Plaintiff also alleges claims under the Fourteenth Amendment. However, as held by the Third Circuit, the "more-specific-provision" rule forecloses Plaintiff's substantive due process claims. *Betts v. New Castle Youth Development Center*, --- F.3d ----, 2010 WL 3528902 at *9 (3d Cir. September 13, 2010). "Under this rule, if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (*Id.* at 8) (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386 (1989))).  It appears that Plaintiff makes the same allegations for both his Fourteenth Amendment claims and his Fourth Amendment claims. As such, his Fourteenth Amendment claims are hereby dismissed.

22

### d. Equal Protection

In his Notice of Claim to the Police Defendants, Plaintiff alleges that the arrests were racially motivated.  However, a review of the complaint does not reveal any allegations which support or indicate that Plaintiff intends to allege racial motivation.  In his June 9, 2010 filing, Plaintiff appears to argue that he is alleging racial motivation for his arrests pursuant to 42 U.S.C. §1942.  However, as stated above, the Court was unable to locate said statute. To the extent that Plaintiff attempts to allege that Defendants engaged in improper selective enforcement or discrimination under the Fourteenth Amendment when arresting him, Plaintiff's claim cannot stand.  Plaintiff simply has not alleged any facts in his Complaint that would lead this Court to conclude that he is alleging selective enforcement or racial discrimination and Plaintiff certainly has not alleged any facts to support any such allegations.  Therefore, to the extent that Plaintiff's Complaint can be read to allege violations of the Equal Protection Clause, those claims will be dismissed.

Though it does not appear to the Court that Plaintiff is seeking or has sought leave to amend his Complaint to include an Equal Protection claim, to the extent that Plaintiff intended that his papers be read to include a request for leave to amend, the Court finds that such a request would be denied at this time. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility").  At this late stage of the case, when discovery has closed and motions for summary judgment have been filed, the Court finds that allowing amendment would be prejudicial to Defendants and Plaintiff unduly delayed in seeking

leave to amend.  The Court further finds that amendment would be futile as probable cause existed for the arrests.[11]

## III. Conclusion

For the foregoing reasons, the Court will grant Defendants' motions for summary judgment.  Since the Court will grant Defendants' motions in their entirety, it is unnecessary for the Court to address Plaintiff's motions and said motions are denied.  An appropriate order follows.

Dated: October 12, 2010

s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR.
UNITED STATES DISTRICT JUDGE**

---

[11] The Court further finds that to the extent Plaintiff seeks to amend any of his other claims, that request would also be denied on the grounds of prejudice to Defendants, undue delay and futility.  Plaintiff has not provided any justification for waiting until this late juncture to seek to amend.  Further, as the Court has found that the statute of limitations and qualified and absolute immunity apply to Plaintiff's claims and probable cause existed, amendment of the Complaint would be futile.